UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22048-CIV-ALTONAGA/Goodman

**RAFAEL HERRERA**, *et al.*,

    Plaintiffs,
v.

**MATTRESS FIRM, INC.**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiffs, Rafael Herrera, Mauricio Altamirez, and Jose Diaz's Motion to Certify Collective Action Pursuant to 29 U.S.C.[] [Section] 216(b) and Facilitate Notice to Potential Class Members [ECF No. 45], filed July 18, 2017. The Court has carefully reviewed the Motion; Defendants' Omnibus Response [ECF No. 59]; Plaintiffs' Reply [ECF No. 70]; the parties' supporting exhibits; and applicable law. For the reasons that follow, the Motion is denied.

### I.  INTRODUCTION[1]

Plaintiffs, for themselves and on behalf of a collective class, have brought a claim for failure to pay overtime compensation against Defendants, Mattress Firm, Inc.; Edwin V. Delivery Services, Inc.; Edwin Vindas; C.S.F. Enterprises, Inc.; and Felix Pacheco, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 216(b). (*See generally* Am. Compl.).

---

[1] The facts are taken from the Amended Complaint [ECF No. 6] and the declarations submitted by the parties. *See Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1275 (M.D. Ala. 2004) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (stating that district courts decide motions for conditional certification "based only on the pleadings and any affidavits which have been submitted" (citation omitted))).

Mattress Firm is a specialty bedding retailer in the United States which sells mattresses, beds, and other bedding products to the public. (*See* Resp., Ex. A. [ECF No. 59-1] Declaration of Christopher Green ¶ 3). Mattress Firm operates more than 3,000 retail stores in 36 states. (*See id.*). Edwin Delivery and C.S.F. are delivery service providers who deliver mattresses on behalf of Mattress Firm to its customers in South Florida. (*See id.* ¶¶ 3–4). Their respective arrangements with Mattress Firm are governed by separate Independent Contractor Delivery Agreements (*see* Resp., Exs. A-1 & A-2 [ECF No. 59-1]). Vindas is the President of Edwin Delivery (*see* Edwin Delivery and Vindas's Answer [ECF No. 26] ¶ 26), and Pacheco is the owner of C.S.F. (*see* Am. Compl. ¶ 32; C.S.F. and Pacheco's Answer [ECF No. 28] ¶ 32).

Plaintiffs are delivery drivers who delivered Mattress Firm's inventory to its customers. (*See* Am. Compl. ¶¶ 35–37; 41–42; 46–48). Diaz and Altamirez were employed by Edwin Delivery and Vindas (*see* Mot., Ex. C, Declaration of Jose Diaz [ECF No. 45-3] ¶ 3; Mot., Ex. C, Declaration of Mauricio Altamirez [ECF No. 45-3] ¶ 3), and Herrera was employed by Edwin Delivery and Vindas as well as C.S.F. and Pacheco during alternate time periods (*see* Mot., Ex. C, Declaration of Rafael Herrera [ECF No. 45-3] ¶ 5). Plaintiffs allege they were paid per delivery, irrespective of hours worked. (*See* Am. Compl. ¶¶ 39, 44, 50). Plaintiffs assert Herrera and Altamirez worked on average approximately 112 hours per week (*see id.* ¶¶ 38, 43), and Diaz worked approximately 96 hours per week (*see id.* ¶ 49). Plaintiffs contend they are entitled to overtime compensation under the FLSA for each hour worked over 40 each workweek (*see id.* ¶ 76), and seek compensatory and liquidated damages, as well as reasonable attorney's fees (*see id.* 14, 16, 18–19, 21[2]).

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Plaintiffs claim Mattress Firm sought to evade the FLSA by misclassifying its delivery drivers as independent contractors and sub-contracting with companies like Edwin Delivery and C.S.F. to deliver Mattress Firm's products to its customers. (*See id.* ¶ 54). Although Plaintiffs were directly employed by Edwin Delivery and C.S.F., Plaintiffs point out numerous ways in which Mattress Firm held true control over the employment relationship. Plaintiffs allege Mattress Firm dictated who Edwin Delivery and C.S.F. hired and fired (*see id.* ¶ 56); required Plaintiffs to fill out applications with Mattress Firm in order to be employed by Edwin Delivery and C.S.F. (*see id.* ¶ 57); required Plaintiffs to provide customers with candy and a card upon making a delivery, and had the power to discipline, suspend, or terminate Plaintiffs if they failed to do so (*see id.* ¶ 58); required Plaintiffs' trucks to display Mattress Firm logos (*see id.* ¶ 59); required Plaintiffs to bring used mattresses from customers' homes to Mattress Firm warehouses and process the mattresses, as well as "recycled materials such as cardboard and plastic" for subsequent resale by Mattress Firm (*id.* ¶¶ 67–69); required Plaintiffs to deliver mattresses to Mattress Firm storefronts and assemble furniture for display (*see id.* ¶ 72); required Plaintiffs to attend daily meetings at a Mattress Firm warehouse with a Mattress Firm warehouse manager (*see id.* ¶ 73); and restricted Plaintiffs from delivering for businesses other than Mattress Firm (*see id.* ¶ 60). Plaintiffs assert Edwin Delivery and C.S.F. required Plaintiffs to work double shifts "as per [Mattress Firm's] requirements." (*Id.* ¶¶ 63–64 (alteration added)). Plaintiffs allege Mattress Firm is the sole client of Edwin Delivery and C.S.F. (*See id.* ¶¶ 65–66).

In his Declaration, Mattress Firm employee Christopher Green asserts "Mattress Firm bears no financial or managerial responsibility for Edwin Delivery or C.S.F. drivers." (Green Decl. ¶ 6). Green describes several ways Mattress Firm is separated from the employment relationship between Edwin Delivery and C.S.F. and their drivers: "[d]elivery drivers for Edwin

Delivery and C.S.F. do not receive a Mattress Firm handbook" and are not subject to Mattress Firm attendance policies (*id.* (alteration added)); although Mattress Firm requires Edwin Delivery and C.S.F. to ensure its drivers pass criminal background checks and drug tests, Mattress Firm does not conduct the background checks or pay them (*see id.* ¶ 7); while Mattress Firm dictates pick-up times and delivery windows to its delivery service providers and organizes the deliveries into routes to determine the number of trucks needed to make deliveries each day, the delivery service providers determine which routes and deliveries are assigned to their drivers and when inventory will be delivered (*see id.* ¶ 8); and Mattress Firm "has no involvement" in the delivery service providers' compensation of drivers, does not pay payroll taxes or issue IRS reporting forms for delivery drivers, and does not provide employee benefits or workers' compensation insurance for delivery drivers (*id.* ¶ 9).

> Plaintiffs seek to represent and have notice sent to the following class of drivers:
>
> All non-exempt delivery drivers hired by any of [Mattress Firm's] subcontractors during the three (3) years preceding this action, who [were] classified as independent contractors, and who were not compensated at least the applicable overtime rate of time and a half their regular rate of pay pursuant to the FLSA for hours worked over forty (40) in a workweek.

(Mot. 7 (alterations added)). Plaintiffs assert Defendants improperly classified members of the prospective class as "independent contractors" and the proposed class members are entitled to the same relief sought by Plaintiffs. (*See id.* 18). In near-identical Declarations, each named Plaintiff asserts he has "personal knowledge, based on first hand observations, that similar delivery personnel who had the same job duties and responsibilities" worked for Edwin Delivery and Vindas, "for the benefit of Mattress Firm" and "were not properly paid for all hours worked." (Diaz Decl. ¶ 6; Altamirez Decl. ¶ 6; Herrera Decl. ¶ 8). Herrera also asserts personal knowledge of delivery personnel working for C.S.F, Pacheco, as well as "Las 4 A Delivery

4

Corporation[,] and Alexander Ortega,"[3] who were not properly compensated for hours worked. (Herrera Decl. ¶ 8).

Each named Plaintiff claims he has "specific knowledge that there were, at a minimum, 20 delivery drivers, at any given time, working out of the Mattress Firm . . . warehouse" in Medley, Florida, who were "classified as independent contractors," employed by Edwin Delivery as well as "other contractors," and were "not properly and timely paid their overtime wages." (Diaz Decl. ¶¶ 7–8; Altamirez Decl. ¶¶ 7–8; Herrera Decl. ¶¶ 9–10 (alteration added)). Diaz, Altamirez and Herrera all express certainty "there are qualifying former and current employees who would join the lawsuit if they were informed about it, understood their rights, and understood that retaliation against assertion of those rights was unlawful." (Diaz Decl. ¶ 9; Altamirez Decl. ¶ 9; Herrera Decl. ¶ 11). Since the Motion was filed, three individuals have filed Consents [ECF Nos. 48, 51, 60] to join Plaintiffs' lawsuit.

Plaintiffs request the Court (1) grant conditional certification; (2) require Defendants to provide identifying and contact information for every delivery driver within the putative class; (3) require Defendants to provide a list of subcontractors to which Plaintiffs may send third-party subpoenas requesting the names of similarly situated delivery drivers; (4) permit Plaintiffs to serve the proposed Notice on members of the putative class by mail, e-mail, and/or fax in both English and Spanish; (5) require Defendants to post the Notice in their business offices; (5) appoint the named Plaintiffs' counsel as Class Counsel; and (7) award any other relief the Court deems proper.

---

[3] 4 A and Ortega are not named as defendants in this action and Plaintiffs assure the Court "there will not be a need to add additional defendants." (Reply 9).

Defendants argue the Motion should be denied because Plaintiffs do not meet their burden to show members of the proposed class are "similarly situated" to Plaintiffs or would be interested in joining the lawsuit. (*See generally* Resp.).

## II.  LEGAL STANDARD

The FLSA permits a plaintiff to bring a collective action on behalf of similarly-situated persons subject to the requirement that prospective plaintiffs file a written consent in the court where the action is brought. *See* 29 U.S.C. § 216(b); *see also Hipp*, 252 F.3d at 1216 (citations omitted). In the interest of judicial economy, district courts have discretionary power to authorize the sending of notice to potential class members. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Notice should only be authorized in appropriate cases. *See Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983). In order to grant conditional collective action certification, the Court must, at a minimum, satisfy itself that there are other employees who (1) are similarly situated with regard to their job requirements and pay provisions, and who (2) desire to opt into the case. *See Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

Regarding the first requirement, the named Plaintiffs bear the burden of proving they and the class they seek to represent are similarly situated. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). To evaluate whether a plaintiff has demonstrated the existence of a similarly-situated class, courts in the Eleventh Circuit utilize a two-tiered procedure that recognizes distinct burdens at different stages of the litigation process. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (citing *Hipp*, 252 F.3d at 1218 and collecting cases). The first tier — the one at issue in the present Motion — is referred to as the notice stage. *See id.* (quoting *Hipp*, 252 F.3d at 1218).

6

> At the notice stage, the district court makes a decision — usually based only on the pleadings and any affidavits which have been submitted — whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Id.* (quoting *Hipp*, 252 F.3d at 1218).

The second tier of analysis, re-examining the question of certification after discovery is complete, follows a motion for "decertification" by the defendant. *Id.*

> At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives — i.e. the original plaintiffs — proceed to trial on their individual claims.

*Id.* (quoting *Hipp*, 252 F.3d at 1218).

Regarding the second requirement, a plaintiff must show there are employees who would opt in if given notice. *See Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) ("[A] showing that others desire to opt-in must be made before notice is authorized." (alteration added; footnote call number and citation omitted)). Based on this showing, a "district court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' . . . ." *Dybach*, 942 F.2d at 1567 (alteration added). The burden is on the plaintiff to produce evidence demonstrating aggrieved individuals exist within the proposed class. *See Haynes*, 696 F.2d at 887–88 (holding the court properly declined to authorize notice to a prospective class where the only evidence presented was counsel's assertions that FLSA violations were widespread and that additional plaintiffs would come from

7

other stores). If the plaintiff does not satisfy this burden, the Court should decline the certification of a collective action "to avoid the 'stirring up' of litigation through unwarranted solicitation." *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002) (quoting *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995)).

### III.   ANALYSIS

The primary question at this notice stage is whether Defendants' "employees are similarly situated with respect to their job requirements and with regard to their pay provisions" and whether these individuals desire to opt-in. *Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 675 (S.D. Fla. 2013) (internal quotation marks omitted) (quoting *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1282–83 (S.D. Fla. 2012)). As noted, the Court applies a "fairly lenient standard" at the notice stage in determining whether the class should be conditionally certified. *Hipp*, 252 F.3d at 1218. The rationale for this is that "at the early stages of litigation, plaintiffs have not had time to conduct discovery and marshal their best evidence." *Davis*, 303 F. Supp. 2d at 1276 (citing *Hipp*, 252 F.3d at 1218).

### A.   Evidence the Named Plaintiffs Are Similarly-Situated to the Proposed Class

Regarding the "similarly-situated" requirement, courts commonly consider five factors at the conditional-certification stage: (1) whether the plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claimed violations are similar. *See, e.g.*, *Rojas*, 297 F.R.D. at 677 (citations and internal quotation marks omitted). No single factor is dispositive. *See id.* (citation omitted). In addition to these factors, Defendants

assert "Plaintiffs must be able to show that the putative collection [*sic*] action members are similarly situated with respect to the analysis the court would engage in to determine whether the drivers are employees or independent contractors." (Resp. 20 (alteration added; citation omitted)).

As to the first factor, Diaz, Altamirez, and Herrera all claim to have been "delivery driver[s]" (Diaz Decl. ¶ 3; Altamirez Decl. ¶ 3; Herrera Decl. ¶ 5), the same job title as members of their prospective class. The first factor is plainly satisfied here.[4]

Regarding the second factor, Herrera states he "worked out of Mattress Firm['s] . . . Tampa/St. Petersburg, Florida warehouse as well as out of Mattress Firm['s] . . . Dania Beach[] and Miami, Florida warehouses." (Herrera Decl. ¶ 3 (alterations added)). While the Declarations and the Amended Complaint do not specify where Altamirez worked, he testified at his deposition the only Mattress Firm warehouse he reported to was in Okeechobee, Florida. (*See* Resp., Ex. B, Deposition of Mauricio Altamirez [ECF No. 59-2] 58:17–24). Plaintiffs do not state in any of their filings where Diaz worked. However, Altamirez testified Vindas only performs delivery services out of Mattress Firm's Okeechobee warehouse (*see* Altamirez Dep. 58:17–59:11), and Diaz stated in his Declaration he was a delivery driver for Vindas and Edwin Delivery (*see* Diaz Decl. ¶ 3). The Court can thus surmise Diaz worked in South Florida along with Herrera and Altamirez.

---

[4] Plaintiffs state in their Reply "[p]utative class members also held the job . . . 'driver's helper.'" (Reply 6 alterations added)). However, their proposed class in both their Motion and proposed Notice to prospective class members is limited to "delivery drivers." (*See* Mot. 7; Mot., Ex. D, Notice of Opportunity to Join a Lawsuit [ECF No. 45-4] 3–4 ("You can join if you worked for [Mattress Firm] . . . as [a] Delivery Driver." (alterations added))). While Herrera worked as a helper before becoming a delivery driver in 2011 (*see* Resp., Ex. C, Deposition of Rafael Herrera [ECF No. 59-3] 22:15–18, 26:24–27:2, 28:4–10), his employment as a helper occurred before the proposed class period began — three years before the filing of this action (*see* Mot. 7). The Court declines to opine as to whether the position of helper is sufficiently similar to delivery driver, and instead finds only the "delivery driver" position held by the named Plaintiffs during the class period satisfies the first factor because it is identical to the "delivery driver" position described in the proposed class described in the Motion and Notice.

9

Although all three named Plaintiffs appear to have worked in the same geographic location, Plaintiffs do not seek to limit the prospective class to delivery drivers in South Florida. Instead, Plaintiffs insist "[s]imilarly situated employees also include . . . delivery drivers . . . throughout the United States." (Mot. 3 (alterations added)). As Mattress Firm operates retail locations in 36 states (*see* Green Decl. ¶ 3), the named Plaintiffs have not shown similarity of location among the prospective class.

The third factor, whether the alleged FLSA violations occurred at similar times, weighs in favor of certification. Plaintiffs limit the prospective class to delivery drivers employed within three years of the lawsuit (*see* Mot. 16; Notice 3–4), and all three named Plaintiffs were delivery drivers at some point during that three-year period (*see* Diaz Decl. ¶ 3; Altamirez Decl. ¶ 3; Herrera Decl. ¶ 5).

As to the fourth and fifth factors, Plaintiffs argue they and the putative class were subject to a "common payroll policy or scheme." (Mot. 13 (citations omitted)). Plaintiffs assert the class members were all "delivery drivers" who "could not be classified as exempt under the FLSA," but were nonetheless "not paid for all of their regular and overtime hours worked." (*Id.*).

In support of this argument, Plaintiffs state in their Reply, "each Plaintiff was . . . subjected to essentially the same Mattress Firm Independent Contractor Delivery Agreement, with essentially identical Mattress Firm policies and practices." (Reply 8 (alteration added)). Plaintiffs point out the Independent Contractor Delivery Agreements governing the relationship between Mattress Firm and Edwin Delivery, and Mattress Firm and C.S.F., are "essentially identical" to an Independent Contractor Delivery Agreement between Mattress Firm and Larry R. Pack Enterprises (*see* Declaration of Roberto Costales [ECF No. 70-3], Ex. 1, Independent

10

Contractor Delivery Agreement 4–22), an independent contractor operating out of Louisiana. (*See* Reply 8–9). Plaintiffs note the three Agreements contain similar or identical requirements regarding qualifications for drivers and helpers; training required for drivers; customer service requirements; vehicle requirements; requirements regarding interactions with customers; instructions regarding "haul offs" of customers' old mattresses to Mattress Firm warehouses; and non-solicitation clauses preventing the independent contractors and their drivers from soliciting Mattress Firm suppliers, employees, and customers for the purpose of competing with Mattress Firm. (*See* Reply 9).

Even were these arguments properly presented — they appear for the first time in Reply, which must "be strictly limited to rebuttal of matters raised in the memorandum in opposition," S.D. FLA. L.R. 7.1(c) — they do not fully satisfy the Court the employees in the class are indeed subject to a common payroll scheme. Plaintiffs do not allege in the Amended Complaint or in their Declarations other drivers in the putative class received a per-delivery rate of pay, as opposed to a per-day rate of pay. Plaintiffs' bare assertions the other drivers in the class "were not properly and timely paid their overtime wages" (Diaz Decl. ¶ 8; Altamirez Decl. ¶ 8; Herrera Decl. ¶ 10), do not inform the Court as to whether each member of the class was subject to the same payroll policy or practice.

The Consents filed by class members opting into the lawsuit are similarly devoid of any information regarding what kind of payroll scheme the opt-in class members were subject to. While Plaintiffs allege "specific knowledge" of "at a minimum, 20 delivery drivers . . . working out of the Mattress Firm, Inc. warehouse located at 11401 N.W. 134 Street[,] Medley, Florida 33178, who were classified as independent contractors" (Diaz Decl. ¶ 7; Altamirez Decl. ¶ 7; Herrera Decl. ¶ 9 (alterations added)), "the mere classification of a group of employees . . . as

exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for [section] 216(b) purposes, *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010) (alterations added). The Court accordingly cannot "satisfy itself that there are other employees who . . . are similarly situated with regard to . . . pay provisions." *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, No. 11-24432-CIV, 2012 WL 1933553, at *2 (S.D. Fla. Apr. 10, 2012) (alterations added; citations omitted).

In addition to weighing the five factors, Defendants insist the Court must also consider whether the putative class members are similarly situated with respect to the economic realities test the Court must inevitably apply to determine whether the drivers are employees or independent contractors. (*See* Resp. 20). Plaintiffs contend such an inquiry is inappropriate at this stage because significant discovery has not yet been taken. (*See* Reply 12–14).

"[I]n making a determination in whether to conditionally certify a proposed class for notification purposes only, courts do not review the underlying merits of the action." *Rojas*, 297 F.R.D. at 675 (alteration in original) (quoting *Pares v. Kendall Lakes Auto., LLC*, No. 13-20317, 2013 WL 3279803, at *3 (S.D. Fla. June 27, 2013)). At this first-tier inquiry, the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Devries v. Morgan Stanley & Co. LLC*, No. 12-81223-CIV, 2014 WL 505157, at *7 (S.D. Fla. Feb. 7, 2014) (internal quotation marks and citation omitted). It is thus "premature" to determine at this stage whether Plaintiffs and the proposed class members are employees of Mattress Firm and not independent contractors. *Pena v. Handy Wash, Inc.*, No. 14-20352-CIV, 2014 WL 12531537, at

\*7 (S.D. Fla. July 3, 2014).

Nonetheless, it is appropriate to consider whether the economic realities test can be easily applied on a class-wide basis, or whether Plaintiffs are so differently situated that applying the test would require an "individualized assessment" which "eviscerates all notions of judicial economy that would otherwise be served by conditional class certification," *Demauro v. Limo, Inc.*, No. 8:10-cv-413-T-33AEP, 2011 WL 9191, at \*4 (M.D. Fla. Jan. 3, 2011); *cf. Lewis-Gursky v. Citigroup, Inc.*, Case No. 8:15-CV-2887-T24-MAP, 2017 WL 892604, at \*6 (M.D. Fla. Mar. 6, 2017) (denying conditional certification where the inquiry as to whether the defendant was a joint employer of the plaintiffs could not be conducted across the class and instead required an individualized inquiry); *Bedoya*, 2012 WL 1933553, at \*5 (finding class was not similarly situated so as to warrant conditional certification where "some drivers were incorporated while others were not, demonstrating that the drivers may not all have had the same formal relationship with Defendants"); *Pena*, 2014 WL 12531537, at \*8–9 (granting conditional certification after analyzing whether the economic realities test could be applied on a class-wide basis and concluding "the majority of the economic realities factors can be assessed collectively"). Plaintiffs argue such a consideration is premature at this stage, and contend *Lewis-Gursky* is "inapposite" because the parties in that case had conducted six months of discovery prior to the conditional certification motion, while the parties here have engaged in minimal discovery. (Reply 14).

The Court disagrees this analysis can only be conducted once the parties have taken significant discovery. One of the main purposes for examining whether the economic realities test will require an individualized inquiry or can be applied across the class is to prevent "[h]ighly [i]ndividualized, [f]act-[i]ntensive [d]iscovery." *Pena*, 2014 WL 12531537, at \*7

(alterations added). Judicial economy would not be well served in requiring significant discovery before the Court examines whether individualized, fact-intensive discovery can be avoided. While the Court will not evaluate the merits of the economic realities factors as applied to Plaintiffs, the Court examines at this stage whether the factors can be easily applied on a class-wide basis.

"The 'economic realities' test is employed in FLSA cases to determine whether an individual is an employee versus an independent contractor for purposes of the Act." *Aidone v. Nationwide Auto Guard, LLC*, 985 F. Supp. 2d 1346, 1348 n.1 (S.D. Fla. 2013). "An employee is an individual 'who as a matter of economic reality [is] dependent upon the business to which [he] render[s] service.'" *Id.* (alterations in original; citation omitted).

> In making this determination, courts consider the following "economic realities" factors:
>
> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship; [and]
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Altman v. Sterling Caterers, Inc.*, 879 F. Supp. 2d 1375, 1380 (S.D. Fla. 2012) (alteration added; citations omitted). "[T]hese six factors are a guide, are not exhaustive and no single factor is dispositive." *Id.* at 1381 (alteration added; citation omitted). The factors are also relevant to assessing whether Plaintiffs and the class they seek to represent are similarly situated. *See*

*Gutescu v. Carey Int'l, Inc.*, No. 01-4026-CIV, 2003 WL 25586749, at *10 (S.D. Fla. July 21, 2003) (considering the factors under the "economic realities test" in determining whether the plaintiffs were similarly situated in order to certify a conditional FLSA class).

Citing *Demauro*, Defendants contend application of the economic realities test to the proposed class would require an individualized analysis of each class member and thus "eviscerate[] all notions of judicial economy that would otherwise be served by conditional class certification." (Resp. 24 (alteration added; internal citation and quotation marks omitted) (quoting *Demauro*, 2011 WL 9191, at *3)). *Demauro* is distinguishable from the present case. In *Demauro*, the defendants submitted "numerous declarations of ExecuCar drivers who do not claim to be employees, but rather who state that they prefer to be independent contractors who are not entitled to the FLSA's overtime provisions." *Demauro*, 2011 WL 9191, at *4 n.5. No like statements have been submitted here.

Even so, analyzing the six economic realities factors, it appears only factors (4) and (6) can be analyzed on a class-wide basis. Presumably every "delivery driver" in the class would need a similar skill to complete his or her deliveries, regardless of the individualized circumstances of the employment relationship with Mattress Firm. Likewise, whether mattress deliveries constitute an integral part of Mattress Firm's business can be addressed without an individualized analysis of each class member.

The remaining factors require a case-by-case analysis. Factor (1), "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed," *Altman*, 879 F. Supp. 2d at 1380, differs depending on whether a delivery driver in the class is directly employed by Mattress Firm or whether the driver is employed by an intermediary such as Edwin Delivery or C.S.F. While all named Plaintiffs were employed by intermediaries and

Plaintiffs' proposed class appears to be limited to drivers employed by Mattress Firm subcontractors (*see* Mot. 7), the proposed Notice does not exclude delivery drivers employed directly by Mattress Firm (*see* Notice 3–4 ("You can join if you worked for [Mattress Firm], . . . [Edwin Delivery], . . . [Vindas], . . . C.S.F. . . ., [Pacheco] . . ., or any other company subcontracted by [Mattress Firm] . . . ." (alterations added)). Additionally, the opt-in members of the putative class do not specify in their Consents whether they were employed directly by Mattress Firm or through an intermediary. Moreover, while Plaintiffs have demonstrated Mattress Firm's agreements with Edwin Delivery, C.S.F., and Larry R. Pack Enterprises contain similar provisions, Plaintiffs do not allege in the Amended Complaint or in their Declarations Mattress Firm exercised similar control over the work of each driver employed by intermediaries other than Edwin Delivery, C.S.F. or Larry R. Pack Enterprises.

Plaintiffs also fail to demonstrate each employee in the proposed class had a similar opportunity for profit or loss or exercised similar investment in materials. Herrera testified Edwin Delivery gave him the option of driving his own personal delivery truck or driving a truck provided by Edwin Delivery, and he would be paid different rates per delivery depending on which option he elected. (*See* Herrera Dep. 56:12–21). Herrera initially worked for 4 A earning a $10 per-delivery rate while operating 4 A's vehicle, before he later moved to C.S.F. where he operated his own truck, earning $28 to $40 per delivery. (*See id.* 63:18–65:7). Altamirez testified he performed services for Edwin Delivery through his own company, M.K. Altamirez, Inc., under which he owned two trucks, employed himself and his brother, and paid his brother and his helpers out of his own earnings. (*See* Altamirez Dep. 41:23–42:2, 63:12–64:18). Even as between Herrera and Altamirez, different degrees of investment were exhibited. Plaintiffs do not allege each member of the proposed class invested in his or her own delivery truck, or even

had the opportunity to do so, and the proposed class described in the Motion is not limited to those who did. Accordingly, factors (2) and (3) cannot be examined on a class-wide basis and instead require individualized analyses.

Finally, Plaintiffs do not clarify in their proposed Notice what degree of permanency or duration of employment is required for a Mattress Firm "employee" to join the class. If the class consists of both permanent and temporary drivers for Mattress Firm, factor (5) must be addressed on an individualized basis.

Upon examination of the Amended Complaint and Declarations put forth by Plaintiffs, the Court concludes Plaintiffs have not met their burden to show members of the proposed class are similarly situated, as they have not shown the class members were subject to a common payroll scheme or that the economic realities test can be applied on a class-wide basis.

### B. Evidence Employees Desire to Opt In

As Plaintiffs have failed to show the class members are similarly situated, the Court need not determine whether the evidence presented by Plaintiffs — three bare Consents lacking any information other than the names of class members opting in, as well as the Costales Declaration stating the plaintiff in a similar action, *Perry Blair v. Mattress Firm, Inc., et al.*, Case No. 2:16-cv-14119, filed against Mattress Firm in the Eastern District of Louisiana, would agree to have his case transferred and consolidated with the present case[5] — is sufficient to satisfy their burden of showing similarly situated class members desire to opt in.

### C. Sufficiency of Proposed Notice and Information Sought from Defendants

Because Plaintiffs have not met their burden to show conditional certification is warranted, Defendants are not required to provide Plaintiffs with a list of delivery drivers within

---

[5] Plaintiffs do not mention the *Blair* case in their Motion, and instead improperly bring it to the Court's attention in their Reply, to which the Costales Declaration was attached.

the proposed class or of subcontractors employing delivery drivers. The Court need not opine on the sufficiency of the proposed Notice to potential class members, and Defendants need not conspicuously post the Notice in their offices.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Motion **[ECF No. 45]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida this 26th day of September, 2017.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record